UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

FREEDOM FOUNDATION,

      Plaintiff,

      v.

DAN RAYFIELD, *in his official capacity as the Attorney General for the State of Oregon*; OREGON EMPLOYMENT RELATIONS BOARD; ADAM RHYNARD, *in his official capacity as the Board Chair of the Oregon Employment Relations Board*; SHIRIN KHOSRAVI, *in her official capacity as a Board Member of the Oregon Employment Relations Board*; BENJAMIN O'GLASSER, *in his official capacity as a Board Member of the Oregon Employment Relations Board*; OREGON AFSCME COUNCIL 75; OREGON AFSCME COUNCIL 75, AFL-CIO LOCAL 2064; SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 503, OREGON PUBLIC EMPLOYEES UNION; OREGON EDUCATION ASSOCIATION; OREGON SCHOOL EMPLOYEES ASSOCIATION,

      Defendants.

Case No. 3:25-cv-02451-MTK

**OPINION AND ORDER**

**KASUBHAI,** United States District Judge:

Plaintiff brings claims for declaratory and injunctive relief under 42 U.S.C. § 1983 ("Section 1983") for alleged Constitutional violations arising out of the Oregon State Legislature's enactment of House Bill 3789. Plaintiff alleges that the statute violates both the

Page 1 — OPINION AND ORDER

First Amendment and the Due Process Clause. Plaintiff sues Defendant Dan Rayfield in his official capacity as Oregon's Attorney General; the Oregon Employment Relations Board ("ERB"), its chair, and two of its members (collectively, "State Defendants"); and five different labor organizations representing public sector workers (collectively, "Union Defendants"). Compl. ¶¶ 5-14, ECF No. 1. Before the Court is Plaintiff's Motion for Preliminary Injunction (ECF No. 2) and Defendants' Motions to Dismiss (ECF Nos. 26, 28). For the following reasons, Defendants' motions are granted, and Plaintiff's motion is denied as moot.

## BACKGROUND

Plaintiff Freedom Foundation is a non-profit corporation "dedicated to informing public-sector employees of their First Amendment right to be free from union membership." Compl. ¶ 4. As part of its work, Plaintiff sends mailers directly to public-sector employees aimed at educating them about how, when, and why those employees could opt out of union membership. *Id.* ¶ 21. Among other things, past and planned future mailers inform union members of their Constitutional right to opt out of paying union dues and of being union members, they provide opt-out forms and offer to transmit them on the union member's behalf, and they include "mockup" checks or other information about the potential savings to union members who opt out. Compl. ¶¶ 22-24, 41-43. Plaintiff claims to have assisted over 30,000 Oregon public-sector employees to leave their unions, saving over $100 million in dues. *Id.* ¶ 26.

In June 2025, the Oregon legislature passed House Bill 3789, and it was enacted into law and enrolled as Oregon Laws 2025, Chapter 307 ("Chapter 307") on June 23, 2025. 2025 Or. Laws ch. 307. Chapter 307 makes it "unlawful for any person to falsely impersonate a union representative," *id.* § 1(2), which the statute defines to mean:

> [U]se fraud or misrepresentation to make a verbal or written communication that purports to be authorized or otherwise approved by a labor organization but that has not, in fact, been authorized or approved by the labor organization, with the

Page 2 — OPINION AND ORDER

intent to undermine or interfere with the operations of the labor organization, or otherwise negatively impact the labor organization.

*Id.* § 1(1)(c). Chapter 307 creates a cause of action for a "union representative alleging a violation of this section" and provides for damages as well as "statutory damages in an amount of $6,250 per incident in any action in which the plaintiff establishes that the defendant falsely impersonated a union representative." *Id.* § 1(4).

Plaintiff alleges that law firms representing labor unions urged the Oregon legislature to pass Chapter 307, specifically singling out Plaintiff and Plaintiff's mailers in their lobbying efforts. *Id.* ¶¶ 31-32. As a result of Chapter 307's enactment, Plaintiff has taken steps to avoid exposure to liability, including adding disclaimers to mailers sent out since the effective date of Chapter 307. Compl. ¶¶ 34-36. Plaintiff alleges that, but for a credible fear of exposure to liability, it would have sent various mailers without disclaimers to public-sector employees who are members of Union Defendants. Compl. ¶¶ 36-43. Plaintiff's fear is based in part on "union correspondence" Plaintiff received in response to a request under the Freedom of Information Act ("FOIA"). *Id.* ¶ 39. In particular, union officials from Defendant AFSCME, upon learning of the FOIA request, warned its members that Plaintiff was "founded specifically to eradicate public sector unions," and asked its members to pass along any of Plaintiff's mailers to union officials for review. *Id.* A union official stated that some of Plaintiff's prior mailers were "so similar to union materials that [they] could violate this new law." *Id.*

On December 31, 2025—the eve of the Chapter 307's effective date—Plaintiff filed this lawsuit alleging that Chapter 307 violates the First Amendment because it constitutes content- and viewpoint-based discrimination, infringes protected speech, and compels speech. Compl. ¶¶ 44-66. Plaintiff also alleges that the statute is unconstitutionally vague under the Due Process Clause. Compl. ¶¶ 67-77.

Concurrently with its Complaint, Plaintiff moved for a preliminary injunction to prevent Defendants from enforcing Chapter 307. ECF No. 2. Defendants oppose entry of a preliminary injunction, and each filed Motions to Dismiss. ECF Nos. 24-28.

**STANDARDS**

**I.      Rule 12(b)(1) Dismissal for Lack of Subject Matter Jurisdiction**

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks and citation omitted). As such, a court is to presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249, 1256 (2022). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (noting that when a court lacks subject-matter jurisdiction, meaning it lacks the statutory or constitutional power to adjudicate a case, the court must dismiss the complaint, even *sua sponte* if necessary).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be either "facial" or "factual." *See Edison v. U.S.*, 822 F.3d 510, 517 (9th Cir. 2016). A facial attack on subject matter jurisdiction is based on the assertion that the allegations contained in the complaint are insufficient to invoke federal jurisdiction. *Id.*

## II.    Rule 12(b)(6) Dismissal for Failure to State a Claim

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Id.* To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *L.A. Lakers,* 869 F.3d at 800. The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

### I.  State Defendants' Motion to Dismiss

The State Defendants move to dismiss Plaintiff's Complaint, arguing (1) that the Eleventh Amendment bars Plaintiff's claims; and (2) that Plaintiff lacks Article III standing because Plaintiff cannot establish causation and redressability. For the reasons below, the Court agrees that Plaintiff's claims against the State Defendants are barred by the Eleventh Amendment and therefore does not reach the second argument.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The Eleventh Amendment erects a general bar against federal lawsuits brought against a state." *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003). "It does not, however, bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1133–34 (9th Cir. 2012) (citing *Ex parte Young*, 209 U.S. 123, 155–56, (1908)). Under the so-called *Ex parte Young* exception to Eleventh Amendment immunity, the named state officer "must have some connection with the enforcement" of the state law being challenged. *Ex parte Young*, 209 U.S. at 157; *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004). That is, "the implicated state official [must] have a relevant role that goes beyond a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision." *Mecinas v. Hobbs*, 30 F.4th 890, 903–04 (9th Cir. 2022) (quotation omitted).

State Defendants contend that Chapter 307 creates a cause of action only for "union representatives," and that none of the named state officers have any connection with the

enforcement of the statute necessary to trigger the *Ex parte Young* exception to Eleventh Amendment immunity. Plaintiff argues that the Oregon Attorney General's general authority under Or. Rev. Stat. § ("ORS") 180.060(1)(d) to prosecute matters at the request of state officers or entities (and the ability of ERB officers to make such requests) provides a sufficient connection for *Ex parte Young* purposes.

Looking first to the language of Chapter 307, its terms limit enforcement to union representatives: "*A union representative* alleging a violation of this section may bring a civil action in a court of appropriate jurisdiction to obtain damages." Or. Laws 2025, ch. 307 § 1(4)(a) (emphasis added). The statute then provides: "In addition to and not in lieu of any other damages that may be claimed, a plaintiff shall receive statutory damages in an amount of $6,250 per incident in any action in which the plaintiff establishes that the defendant falsely impersonated a union representative." *Id.* § 1(4)(b). Plaintiff contends that the reference to "plaintiff" in § 1(4)(b) indicates that the legislature contemplated a larger class of plaintiffs than simply union representatives. This argument is circular. In order to *be* a plaintiff under the statute, the statute must empower the individual to enforce it. That empowerment is provided by § 1(4)(a), and § 1(4)(b) merely provides additional remedies to union representatives who choose to bring litigation and are therefore plaintiffs. In other words, the contextual use of the word "plaintiff" indicates what remedies are available to union representatives who choose to bring litigation (and are therefore plaintiffs) and does not mean the legislature intended to create additional types of plaintiffs in addition to union representatives.

Plaintiff's reliance on ORS 180.060(1)(d) is insufficient to establish State Defendants' connection with the enforcement of Chapter 307 for purposes of triggering the *Ex parte Young* exception to Eleventh Amendment immunity. That statute provides that the Attorney General

Page 7 — OPINION AND ORDER

shall "[a]ppear, commence, prosecute or defend any action, suit, matter, cause or proceeding in any court when requested by any state officer, board or commission when, in the discretion of the Attorney General, the same may be necessary or advisable to protect the interests of the state." ORS 180.060(1)(d). As the Oregon Supreme Court has explained, this statute "describes in a general way the duties of the Attorney General." *Frohnmayer v. State Acc. Ins. Fund Corp.*, 294 Or. 570 (1983).

A "statutorily defined enforcement role satisfies the plain meaning of *Ex parte Young*'s 'some connection' standard . . . [but] 'a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision'" does not. *Matsumoto v. Labrador*, 122 F.4th 787, 802 (9th Cir. 2024) (quoting *Mecinas v. Hobbs*, 30 F.4th 890, 903-04 (9th Cir. 2022). Here, ORS 180.060(1)(d) is precisely the kind of generalized duty statute that is insufficient to meet the "some connection" standard for *Ex parte Young*. Plaintiff has not identified any statutorily defined enforcement role for the Attorney General and has identified no authority for the proposition that ORS 180.060(1)(d) creates a cause of action against state officials not otherwise provided by explicit statutory directive.[1] As Defendants point out, reading ORS 180.060(1)(d) in the way Plaintiff urges would make the Attorney General a universal defendant and would mean that all prior decisions applying Eleventh Amendment immunity to the Attorney General in similar cases were wrongly decided. *See, e.g.*, *Fial v. State*, 2025 WL 2146198, at *3 (D. Or. July 28, 2025) (applying Eleventh Amendment

---

[1] While Plaintiff cites several cases in its brief, it does so for the proposition that "a state official is a proper defendant under *Ex parte Young* even when other entities also have authority to enforce the challenged provision." Pl.'s Combined Reply 4. But exclusivity of enforcement is not the issue, and Plaintiff's argument sidesteps the fundamental problem with Plaintiff's case against State Defendants: that Plaintiff still must identify a statutory enforcement role on the part of the State Defendants, regardless of who else might also have an enforcement role.

immunity where the Attorney General had no specific role in enforcing the statute); *Axos Bank v. Rosenblum*, 2020 WL 7344594, at \*4 (D. Or. Dec. 14, 2020) (same).

Likewise, Plaintiff fails to establish that any of the remaining State Defendants (ERB and its chair and board members) have any connection to enforcement. For those Defendants, Plaintiff again relies on ORS 180.060(1)(d), under which state officers, boards, and commissions may request that the Attorney General "[a]ppear, commence, prosecute or defend any action, suit, matter, cause or proceeding." This argument is therefore even further removed from the argument Plaintiff made for the Attorney General and fails for the same reason. The general ability of state agencies and their officers to request enforcement still requires a statutory enforcement mechanism (i.e. a cause of action), which Plaintiff has failed to identify here. ORS 180.060(1)(d) does not trigger the *Ex parte Young* exception for any of the State Defendants, and they are entitled to Eleventh Amendment immunity. State Defendants' Motion to Dismiss is granted.

## II.    Union Defendants' Motion to Dismiss

The Union Defendants move to dismiss Plaintiff's Complaint, arguing that Plaintiff has failed to state a claim under Section 1983 because Plaintiff fails to allege any state action. To establish a violation of federal constitutional rights under Section 1983, a party must show "(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006). In determining whether a person acts "under color of state law" for purposes of Section 1983, the Ninth Circuit has "recognized at least four different general tests that may aid us in identifying state action: '(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus.'" *Rawson v.*

*Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020) (quoting *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003)).

Here, Plaintiff fails to allege *any* action on the part of Union Defendants for purposes of Section 1983, let alone "state" action. While the parties spill much ink on the question of whether any future enforcement action would constitute "state action" under the various applicable tests, the Court does not reach that question because there are no allegations that any Union Defendant has filed or threatened to file a lawsuit under Chapter 307. It follows then there can be no "action" for the Court to even evaluate under any of the applicable tests. Indeed, none of the Section 1983 "state action" cases Plaintiff cites involve suits against private parties who had been granted a cause of action but had not yet pursued or threatened to pursue one. Under Plaintiff's theory, it could have named every union representative in Oregon in its challenge to Chapter 307 in this case. And, as Union Defendants point out, allowing pre-enforcement review in this context would subject anyone to Section 1983 liability for simply existing in a state that enacts an allegedly unconstitutional law that grants them a civil cause of action.

This problem might just as well be characterized as a justiciability issue as a failure to state a claim under Section 1983. Analyzing the question of ripeness in a pre-enforcement challenge against a labor union related to a different statute alleged to violate the First Amendment, District Judge Michael Mosman acknowledged that while "a relaxed ripeness standard" generally applies to First Amendment pre-enforcement suits against state actors, he was "aware of no case permitting a plaintiff to preemptively challenge the right of a private actor to bring a private cause of action before that cause of action has arisen." *Associated Oregon Indus. v. Avakian*, 2010 WL 1838661, at *4-5 (D. Or. May 6, 2010). Here, Plaintiff cites no case in which a court has allowed a pre-enforcement challenge against a private party who has yet to

sue or threaten to sue. In the absence of any legal support for the proposition that a case or controversy exists when a plaintiff seeks to enjoin a private party from pursuing a cause of action under a statute they have not threatened to enforce, the Court finds that this matter is not ripe.

Plaintiff also argues generally that the Court cannot accept both the State Defendants' and Union Defendants' arguments because such an outcome would deprive them of the ability to obtain pre-enforcement review of the statute because there is no appropriate party to sue. Plaintiff's catch-all argument fails because there is no authority to support a categorical right to pre-enforcement review. To the contrary, "[The Supreme Court] has never recognized an unqualified right to pre-enforcement review of constitutional claims in federal court." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 49 (2021). Instead, "those seeking to challenge the constitutionality of state laws are not always able to pick and choose the timing and preferred forum for their arguments." *Id.*

Regardless of whether the deficiencies in Plaintiff's claims against Union Defendants are characterized as a failure to state a Section 1983 claim or as a justiciability issue, Plaintiff's failure to allege any action or threatened action against it by Union Defendants under Chapter 307 is fatal to its claims. Union Defendants' Motion to Dismiss is granted.

## CONCLUSION

For the reasons discussed above, Defendants' Motions to Dismiss (ECF Nos. 26, 28) are GRANTED and this action is DISMISSED. Plaintiff's Motion for Preliminary Injunction (ECF No. 2) is DENIED IS MOOT.

DATED this 13th day of March 2026.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (he/him)
United States District Judge